## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Darryl Henderson, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> Mary D. Schwarz, ) <br> ) <br> *Defendant.* ) <br> ) <br> ) | Civil Action No. 1:19-cv-00236 <br><br> **JURY DEMANDED** |

## **FIRST AMENDED COMPLAINT**

Plaintiff Darryl Henderson, by his attorneys, complains against Defendant Mary D. Schwarz ("Schwarz") as follows:

## **NATURE AND STATUTORY BASIS OF ACTION**

This is an action by Plaintiff Darryl Henderson, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), housed in the Northern Reception Center ("NRC") unit of Stateville Correctional Center ("Stateville"), whose constitutional rights have been violated by Defendant Schwarz's deliberate indifference toward his serious medical needs during his incarceration at the NRC from August 4, 2016 to January 13, 2017.

Plaintiff brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, *et seq*. Plaintiff seeks actual, consequential, compensatory, and punitive damages.

**THE PARTIES**

1. Plaintiff Darryl Henderson ("Plaintiff" or "Henderson") is, and was at all times relevant to the allegations in this Complaint, a United States citizen and resident of Illinois. During the relevant time periods referenced in this Complaint, Henderson was incarcerated by the Illinois Department of Corrections ("IDOC") within the Northern Reception Center ("NRC") unit of Stateville Correctional Center ("Stateville"), located at 16830 S. Broadway Street, Joliet, IL 60434, from August 4, 2016 to January 13, 2017. Henderson was assigned Inmate No. M-29516 by IDOC.

2. On information and belief, Defendant Mary D. Schwarz ("Schwarz") was, at all times relevant to the allegations in this Complaint, a licensed physician's assistant employed by Wexford Health Services with responsibility for treating inmates at Stateville and the NRC. As a treating physician assistant at Stateville, Schwarz was responsible for the health and wellbeing of the inmates as well as the adequate provision of medical services. On information and belief, she has personal firsthand knowledge of the allegations of this complaint.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(a).

4. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because on information and belief Defendant Schwarz resides in this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL BACKGROUND**

**Henderson Sustained Severe Injuries from Gunshots to His Spine and His Hand**

5. On April 12, 2016, Henderson was shot in the spine and was taken to Condell Medical Center in Libertyville, Illinois. The examining doctors found that the injury had resulted in severe neurological damage and opined that Henderson would most likely never walk again due to the severity of the damage. Henderson remained at Condell Medical Center for one week until he was taken to the Rehabilitation Institute of Chicago ("RIC") for physical therapy. As a result of the therapy, Henderson regained the ability to stand for brief periods of time and walk short distances; however, he continued to suffer from excruciating pain due to the nerve damage he suffered, as well as difficulties walking long distances and up stairs. Further, the nerve damage caused serious complications with Henderson's urinary system and bowel control.

6. The damage to Henderson's nervous system resulting from the gunshot wound to his spine was so severe that he required regular physical therapy in order to recover his mobility and reduce the pain he suffers. Henderson received physical therapy at the RIC and thereafter at the Cook County Jail prior to his admission to the NRC in August 2016.

7. The effects of Henderson's gunshot injury to his spine included the inability to walk, severe pain and discomfort throughout his body, cramps, swelling, constipation, heartburn, and other serious medical complications. To combat these ailments, Henderson required regular medical attention and pain medication. Without access to pain medication, the level of pain which Henderson experienced was drastically increased.

8. On May 7, 2016, Henderson was shot in the hand, and experienced trauma in his hand and his wrist. Henderson visited a physician who placed screws in his hand and wrist for healing. These screws were removed prior to Henderson's incarceration.

9. Henderson's daily life activities during his incarceration were heavily impacted by his injuries. Namely, Henderson required special accommodations to relieve himself of his bodily waste. Henderson was required to wear adult diapers due to his bowel control problems. These diapers required frequent changing, and due to Henderson's pain and limited mobility, he sometimes required assistance to change his diapers. Additionally, Henderson was unable to empty his bladder on his own without the use of a catheter. Specifically, Henderson used a urinary catheter to allow him to urinate, and needed to empty the catheter every four (4) hours; otherwise he experienced extreme pain and discomfort. Moreover, Henderson had difficulties moving or using his wrist and hand. Finally, Henderson had difficulties walking up stairs and long distances due to the limitations on his mobility.

10. During Henderson's incarceration at NRC, Henderson's serious medical needs arose out of the aforementioned gunshot to his spine suffered in April 2016.

### Henderson's Arrival at the NRC in 2016

11. On August 4, 2016, Henderson was transported to NRC for intake. During Henderson's initial intake screening NRC staff observed that Henderson appeared to be in pain because of the length of time he was required to stand. During the intake process at NRC, Henderson had to lie on the ground because of his inability to stand for long periods of time.

12. That same day, Henderson was seen by physician's assistant Schwarz. Henderson explained his medical conditions and disabilities to Schwarz in detail. Schwarz wrote a "Special Needs Permit" indicating that Henderson was to be assigned to a lower bunk in a single cell (a cell by himself) on the first floor of the prison. The Special Needs Permit also indicated that Henderson was to be provided with crutches because of his inability to walk long distances. Finally, the Special Needs Permit indicated that Henderson required use of a urinary catheter.

4

**Henderson Was Not Properly Treated for Bowel and Urological Problems at NRC**

13. As a result of Henderson's injuries, Henderson had significant urological and bowel control issues. After suffering a gunshot wound to his spine in April 2016, Henderson required use of a catheter to rid his body of urine. Catheters must be sterilized frequently in order to minimize the risk of infection, and patients regularly wear gloves while using the catheter for sanitary purposes. The use of an improperly sterilized catheter increases the risk of various infections, including urinary tract infections. In addition, Henderson was required to wear adult diapers due to his inability to control his bowels. For this reason, Henderson required an adequate supply of diapers and "chux" pads (disposable bed underpads) in order to maintain sanitary conditions in his cell.

14. While at NRC, Henderson's urological and bowl issues worsened. He experienced penis discharge, bloody feces, constipation, and vomiting due to constipation. Additionally, Henderson developed a urinary tract infection which was not properly treated. These conditions resulted in Henderson experiencing increased pain and discomfort.

15. Henderson requested stool softener for his constipation and digestive issues. While he was initially provided with stool softener, Defendant Schwarz did not prescribe him stool softener after September 2016.

16. Because of the aforementioned constipation and digestive problems, Henderson did not want to eat, and consequently lost a significant amount of weight, further contributing to his health problems.

### Henderson Was Not Properly Treated for a Urinary Tract Infection at NRC

17. Upon his arrival at NRC, Henderson advised NRC staff that he believed he was suffering from a urinary tract infection (UTI). When Henderson was first examined by Schwarz, pus was found in his catheter bag, indicating that Henderson likely had acquired a UTI.

18. Henderson's urine was tested shortly after his admission in August 2016, and the test results confirmed that Henderson did in fact have a UTI.

19. While Henderson was initially prescribed an antibiotic to treat the UTI, he was not regularly provided with the medication as prescribed, and Schwarz failed to conduct the necessary follow-up with Henderson to ensure that his UTI was properly treated. As a result, Henderson continued to experience urinary pain, indicating that the UTI had not been properly treated.

20. After Henderson was released from NRC in January 2017, he visited a doctor who confirmed that he had a UTI that had not been properly treated while he was at NRC.

### Henderson Was Not Provided With Adequate Pain Medication at NRC

21. During his incarceration at NRC, Henderson required medication to alleviate pain and mitigate other complications resulting from his injuries. Henderson, while at Stateville, was prescribed numerous types of medications, which were to be delivered to his cell daily. Despite the medications being prescribed, they were not regularly given to Henderson for consumption.

22. On August 4, 2016, Henderson was prescribed five different medications by Schwarz: (1) Colace, (2) Fiber-lax Captabs, (3) Ibuprofen, (4) Tramadol, and (5) disposable enemas. Henderson's medication administration records indicate that he was not given the Colace, Fiber-lax Captabs, Ibuprofen, and disposable enemas in the amount that was prescribed.

23. On August 18, 2016, Henderson was prescribed Macrobid for his UTI. Henderson's medication administration records indicate that he only received Macrobid on one occasion.

6

24. On September 8, 2016, Henderson was once again prescribed Colace, Fiber-lax, and Tramadol by Schwarz. Henderson's medication administration records indicate that he was not given the Colace or Fiber-lax in the amount that was prescribed.

25. On September 23, 2016, Henderson was prescribed Naproxen for pain. There is no medication administration record indicating that Henderson was ever given this medication.

26. On October 11, 2016, Henderson was prescribed Naproxen and Methocarbamol for pain. Henderson's medication administration records indicate that he was not given either medication in the amount that was prescribed.

27. Despite regular and repeated requests for pain medication, Henderson was not provided with pain medication as prescribed, and was not prescribed or provided with any pain medication whatsoever beginning in early November 2016.

28. In or about November 2016, Henderson saw Defendant Schwarz and explained that he remained in serious pain and discomfort and asked for additional pain medication and other appropriate medical treatment. Schwarz refused to prescribe Henderson pain medication or provide further medical treatment for his chronic pain.

29. Colace and Fiber-Lax are used to alleviate constipation. Henderson's failure to receive these medications contributed to his pain and suffering as discussed above.

30. Tramadol, Ibuprofen, Naproxen, and Methocarbamol are used to alleviate pain. Without such pain medication Henderson often could barely move due to the severity of pain he experienced. Henderson's failure to receive these medications contributed to his pain and suffering as discussed above.

7

31. Macrobid is used to treat urinary tract infections. Without regular administration of this medication Henderson's urinary tract infection was not properly treated, thus resulting in a prolonged period of pain and discomfort.

## COUNT I

**Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment
(Deliberate Indifference to Serious Medical Needs)**

32. Henderson realleges and incorporates herein the allegations set forth in paragraphs 1 through 31 above.

33. Defendant Schwarz intentionally or recklessly failed to provide Henderson with adequate medical care, failing to give Henderson the baseline level of care for his severe physical and neurological injuries and complications resulting therefrom. Defendant Schwarz's acts and omissions inflicted pain upon Henderson and subjected him to an unreasonable danger of complications from untreated conditions.

34. Defendant Schwarz demonstrated deliberate indifference to Henderson's serious medical needs, by failing to provide Henderson with timely or reasonable medical attention and/or treatment during his incarceration, thereby contributing to Henderson's pain and suffering during his incarceration.

35. The reckless disregard of Defendant Schwarz to Henderson's serious medical needs, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm to Henderson, and amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

36. Henderson's § 1983 claim against Defendant Schwarz arises out of Defendant Schwarz's reckless indifference to Henderson's medical needs while he was incarcerated by IDOC.

WHEREFORE, Henderson respectfully requests the following relief:

A. Compensatory damages to compensate Henderson for the deprivation of his constitutional right to be free from cruel and unusual punishment, including, but not limited to, the physical pain and emotional distress caused by such deprivation, in an amount to be determined at trial;

B. Punitive damages to sanction Defendant Schwarz's deliberate indifference to Henderson's physical safety and to deter Defendant Schwarz and others from engaging in similarly unconstitutional conduct in the future, in an amount to be determined at trial;

C. A declaratory judgment that the acts and practices of Defendant Schwarz violated Henderson's constitutional rights;

D. An award of Plaintiff Henderson's costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Any other relief which this Court many deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

Dated: September 11, 2019 By: */s/ Jeffrey P. Dunning*
Jeffrey P. Dunning
Callie J. Sand
Jacqueline V. Brousseau
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435

Counsel for Plaintiff Darryl Henderson

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 11, 2019, I electronically filed the foregoing FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


Dated: September 11, 2019                        */s/ Jeffrey P. Dunning*