UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL HENDERSON, ) | |
| ) | Case No. 19-cv-0236 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| MARY D. SCHWARTZ, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darryl Henderson, a former Illinois inmate who was housed at the Northern Reception Center ("NRC") unit of the Stateville Correctional Center during the relevant time period, brings this deliberate indifference medical care claim under the Eighth Amendment. The remaining defendant in this lawsuit is licensed physician's assistant Mary D. Schwartz. Before the Court is Schwartz's summary judgment motion under Federal Rule of Civil Procedure 56(a), which the Court grants for the following reasons.

**Background**

Construing the evidence and all reasonable inferences in Henderson's favor, as is required at summary judgment, Henderson was housed at NRC from August 4, 2016 until January 13, 2017. Prior to his incarceration at Stateville, Henderson was shot in the spine in April 2016 and shot in the hand in May 2016. Following the gunshot injury to his lumbar spine, Henderson was diagnosed with a neurogenic bladder condition that requires catheters for urination. Also, he was diagnosed with neurogenic bowel condition and has difficulty emptying his bowels without assistance. Meanwhile, the gunshot injury to his right hand and wrist caused Henderson significant pain.

As a physician's assistant, Schwartz regularly sees patients suffering from urinary tract infections ("UTIs") and monitors patients for potential UTIs. Upon his arrival at Stateville,

Schwartz issued Henderson a special needs permit that granted several accommodations for his physical conditions, including: (1) a first-floor cell with no cellmate; (2) a low bunk bed; (3) a walker; and (4) a supply of catheters. At that time, Schwartz also set forth a plan for Henderson to switch from "Foley" catheters, which create a higher risk of UTIs, to straight catheters.

Days after his arrival at Stateville in August 2016, the University of Illinois Medical Center analyzed Henderson's urine sample, which indicated the existence of a UTI. Based on this report, a Stateville doctor, Dr. Elazegui, proscribed the antibiotic Macrobid 100mg to Henderson for seven days and ordered another urine test after Henderson finished taking the antibiotic. The results of the second urine analysis on August 26, 2016 indicated that Henderson no longer had a UTI. Medical records indicate that Henderson did not make any other complaints about a UTI before he was discharged from Stateville and transferred to the Cook County Jail in January 2017. The Cermak Health Center intake records from Cook County Jail indicate that Henderson had no signs or symptoms of a UTI upon arrival at the Cook County Jail. The Cermak physician examining Henderson charted that Henderson could self-catheterize and was able to urinate through that method.

As to Henderson's bowel problems while at Stateville, Schwartz issued Henderson stool softeners and enemas to alleviate his constipation. Henderson also received numerous medicines to control the pain from his gunshot wounds to his lumbar spine and right hand. On September 23, 2016, Dr. Elazegui, who supervises Schwartz, stopped providing Henderson with the synthetical opioid called Tramadol because it induced constipation. Henderson's October 2020 deposition testimony confirms that Tramadol made him constipated. Dr. Elazegui also noted that Tramadol must not be used for long-term care because of its addictive nature. At that time, Dr. Elazegui substituted the Tramadol with Naprosyn, which is a NSAID. On October 11, 2016, Schwartz saw

2

Henderson, who requested Tramadol at that time. Schwartz, however, prescribed Naprosyn and Robaxin, a muscle relaxant for Henderson's back and leg spasms.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).[1]

**Discussion**

Henderson contends that Schwartz did not properly treat his urological problems and significant pain while he was housed at NRC. "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721-22 (7th Cir. 2021). To meet this standard, Henderson must show: (1) he suffers from an objectively serious medical condition, and (2) Schwartz had subjective knowledge of the substantial risk of harm, and yet disregarded the risk by failing to take reasonable measures to mitigate it. *See Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021); *Murphy v. Wexford Health Sources Inc.,* 962 F.3d 911, 915 (7th Cir. 2020). Deliberate indifference is more than mere negligence

---

[1] Plaintiff's reliance on summary judgment cases decided prior to the Supreme Court's 1986 decisions in *Celotex* and *Anderson* is misplaced because these 1986 decisions departed from the earlier view that summary judgment was a drastic or disfavored remedy. *See Celotex,* 477 U.S. at 327.

3

and "a mistake in professional judgment cannot be deliberate indifference." *Eagan v. Dempsey*, 987 F.3d 667, 688, 695 (7th Cir. 2021) (citation omitted).

The parties do not dispute that Henderson's urological problems and pain are objectively serious medical conditions under the first prong of the deliberate indifference standard. Therefore, the Court's analysis turns on whether Henderson has provided sufficient evidence creating a triable issue of fact to support the inference that Schwartz had knowledge of his health conditions and disregarded them by failing to take reasonable measures to mitigate them. *Perry*, 990 F.3d at 511. To establish this second prong of deliberate indifference, a "plaintiff might point to a number of things, including the obviousness of the risk, the defendant's persistence in a course of treatment known to be ineffective, or proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards that a jury may reasonably infer that the decision was not based on professional judgment." *Thomas v. Martija*, 991 F.3d 763, 768 (7th Cir. 2021) (citation omitted).

Henderson admits that the August 2016 treatment Schwartz provided for his UTI was effective, but nonetheless argues that Schwartz failed to follow-up with him after October 11, 2016 to prevent future UTIs and that this failure amounts to deliberate indifference. Henderson also contends that Schwartz refused to prescribe medications that would sufficiently alleviate the pain he was experiencing.

To establish that she used the appropriate standard of care and exercised proper professional judgment in treating Henderson, Schwartz relies upon an expert witness, Janet Furman, who Henderson did not challenge via a *Daubert*/Federal Rule of Evidence 702 motion. Furman, a licensed and experienced physician's assistant, reviewed the medical records of Henderson's treatment at Stateville, along with depositions of treating staff and Henderson's October 2020 deposition. Furman then provided an expert report and testimony concluding that Dr. Elazegui's

and Schwartz's medical treatment was consistent with the proper standard of care. For example, Furman opined that when a patient shows symptoms of a UTI, the proper standard of care would be to conduct a urine test and prescribe antibiotics, along with a follow-up urine test, which is the protocol Dr. Elazegui and Schwartz administered. Furman also opined in her expert report that at all times during his incarceration at Stateville, Henderson was prescribed and received adequate and reasonable pain control medicine, including Tramadol, Naprosyn, Ibuprofin, and Robaxin. She noted that a side effect of synthetic opioids, such as Tramadol, is further impairment to a neurogenic bladder and bowel, including constipation. In the end, Furman explained that it would be a violation of the standard of care to knowingly provide an opioid to a patient who does not need the medication to achieve the desired pain control.

Henderson has not rebutted Furman's expert opinions. Instead, he counters that the medical records do not properly reflect all of his communications with Schwartz, including that he submitted multiple sick call requests and grievances about his pain and urinary discomfort. Despite this argument, at his August 2021 deposition, Henderson explained that he submitted his grievances and sick calls through the standard process, and that the grievances and sick call requests did not go directly to Schwartz. Evidence in the record reflects that the health care unit received his September 26, 2016 grievance about supplies for his catheter. Otherwise, Henderson has failed to present any evidence raising a triable issue of fact that Schwartz had subjective knowledge of these alleged grievances and sick call requests—and Schwartz's subjective knowledge of Henderson's medical needs is required under the deliberate indifference standard. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 566 (7th Cir. 2021) ("It is not enough to show that prison officials 'should have been aware' of the risk."). In addition, Henderson testified at his August 2021 deposition that he has no knowledge that Schwartz prevented him from receiving any necessary medical treatment after he submitted a sick call request or that she otherwise impeded his medical treatment. Therefore,

Henderson's criticism that Schwartz never treated him after October 11, 2016 does not amount to deliberate indifference to his medical needs because she did not have knowledge of the necessity for any additional treatment.

Although Henderson testified that his pain became more severe and constant after his Tramadol prescription was discontinued, his assertion fails to address the reason for the discontinuance of Tramadol, namely, that it caused his constipation and was not appropriate for long-term care because of its addictive nature. In short, Henderson wanted a medication that presented a risk to his health. Also, conservative use of a powerful medication like Tramadol is a matter of medical judgment. *See Eagan*, 987 F.3d at 689. And, even if Henderson could establish that it was a mistake of professional judgment to take him off the synthetic opioid Tramadol, any such mistake does not amount to deliberate indifference. *Id.* at 688. Henderson wanting Tramadol instead of other pain relievers does not amount to deliberate indifference because "treating pain allows considerable room for professional judgment" and "[m]edical professionals cannot guarantee pain-free lives for their patients." *Norwood v. Ghosh*, 723 Fed. Appx. 357, 365 (7th Cir. 2018).

Because Henderson has not presented sufficient evidence raising a triable issue of material fact that Schwartz knowingly disregarded his serious medical conditions, the Court grants Schwartz's summary judgment motion.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [98]. Civil case terminated.

IT IS SO ORDERED.

Date: 12/6/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge